## UNITED STATES BANKRUPTCY COURT

## IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re KOCH V. HANKINS JUDGMENT ) <br> CREDITOR TRUST, ) <br> ) <br> ) <br> ) <br>                  **Debtor.** ) <br> _____ ) | Chapter 11 Proceedings <br> Case No. 06-02112-PHX-CGC <br><br> UNDER ADVISEMENT DECISION <br> RE: MOTION TO DISMISS |

      Movant Carlon Properties, Inc., ("Carlon") seeks dismissal of this bankruptcy case on two primary grounds: First, that Debtor Koch v. Hankins Judgment Creditor Trust ("Debtor") is not a business trust and, therefore, is ineligible to file a bankruptcy petition under 11 U.S.C. section 109 and, second, that the case was filed in bad faith, relies on misrepresentations of material fact, and is filed improperly to delay or frustrate pending state forfeiture actions and post-judgment attorneys' fee proceedings. At the October 3, 2006, hearing on the motion, the Court noted that a dismissal on bad faith grounds would require an evidentiary hearing and, therefore, would not be ruled on at this time. With respect to the question of whether Debtor is an eligible debtor under Section 109, the Court questioned whether an evidentiary hearing would be necessary or whether a decision could be rendered on the pleadings. That is the issue currently presented.

      Historically, very little is disputed. In the early 1980s, a group of professionals formed a variety of general partnerships that purchased farmland in California. For reasons not important here, these professionals filed a series of lawsuits beginning in 1998 against Carlon and a variety of other defendants in California state court. Eventually, through a series of dismissals and appeals, two of the lawsuits were consolidated and resulted in a judgment in favor of the plaintiff professionals in 1993. As a result of the judgment, the plaintiffs formed the Koch v. Hankins Judgment Creditor Trust as a vehicle through which to collectively enforce the judgment and pay their legal fees. The beneficiaries of the trust were the individual plaintiffs/judgment creditors.

      In 1997, the judgment in plaintiffs' favor was reversed and vacated on appeal. On

remand, the trial court barred the plaintiffs' remaining claims. The court further refrained from deciding the cross-complaints without prejudice to them being decided in a separate action. The defense judgment was affirmed on appeal in 2002, and all that remains now is the final phase of the ancillary post-judgment motion for attorneys' fees against the plaintiffs.

With respect to the Trust specifically, the parties agree that the governing trust document, the Declaration of Koch v. Hankins Judgment Creditor of Trust," states expressly as its purpose in Paragraph 2.2:

> **Purpose.** The purpose of the Trust is to collect efficiently and distribute equitably the Proceeds of the Judgment in <u>Koch v. Hankins</u>, and to insure, timely payment of legal fees for services rendered in pursuing collection of the Judgment.

The Trust estate is defined as "the right to payment under the Judgment, and any actual proceeds collected pursuant to the Judgment and any Reserves held in trust for the uses set forth herein." Further, the Trust was set to terminate on full satisfaction of the Judgment, including payment of all post-judgment interest and payment of all post-judgment interest and the payment of all of the Trust's obligations or the revocation of the Trust by a vote of the Settlors, whichever occurred first. Neither condition has ever occurred.

According to Carlon, the express purpose for the trust is now moot as a result of the judgment being vacated. Further, as the Trust carries on no other business, there is no income from any business and nothing to reorganize. Carlon also points out that the Trust does not satisfy the requirements of California law governing business trust by not filing the required registration.

Debtor admits that it was formed for the primary purpose of enforcing plaintiffs' judgment. Nonetheless, it argues that it qualifies as a business trust for several reasons. For example, although the Trust was formed primarily to enforce the judgment, "it was also intended that the Trust would soon thereafter hold title to, administer and manage the real property located in the Harquahala Valley." Subsequently, in the fall of 1994, the Trust acquired several parcels of jojoba-farming property in the Harquahala Valley from entities related to the plaintiffs/beneficiaries. The Trust currently owns seven such parcels, which are considered property of the estate. According to Debtor, it has managed and administered these parcels ever

since. Part of the management of these parcels has included receiving payments in the form of distributions of excess proceeds of the sale of water rights by the Harquahala Valley Irrigation District. These distributions were the subject of some litigation in Maricopa County Superior Court, which the Trust says it undertook the prosecution of at its own expense and in which it was successful in obtaining over $330,000 in distributions. The Trust also contends that it conducts business by the fact that it has leased some of the parcels, under agricultural leases, to unrelated third parties since at least 1995. Not only did the Trust receive rent and payments of portions of the property taxes, it also received various improvements by way of removal of jojoba crops to the installation of cotton and other crops. Debtor also points to the fact that it was named as a defendant in several forfeiture cases involving various parcel. Last, the Trust also points to the fact it filed annual federal and state tax returns as further evidence of its business purpose.

It is well settled that business trusts qualify as eligible debtors within the definition of corporation in 11 U.S.C. section 101. *See Brady-Morris v. Schilling (In re Kenneth Alan Knight Trust),* 303 F.3d 671 (6th Cir. 2002); *Shawmut Bank Conn. v. First Fidelity Bank (In re Secured Equipment Trust of Eastern Airlines),* 38 F.3d 86 (2d Cir. 1994). Debtor bears the burden of establishing that it qualifies as a business trust under 11 U.S.C. section 109. *In re Secured Equipment Trust of Eastern Air Lines, Inc.,* 38 F.3d 86,89 (2d Cir. 1994); *Tim Wargo & Sons, Inc.,* 869 F.2d 1128, 1130 (8th Cir. 1989).

Unfortunately, the Bankruptcy Code does not define business trust and the courts have not adopted a uniform definition of the term for bankruptcy eligibility. *Id.* However, because a business trust is eligible as a corporation, it must have attributes of a corporation to qualify as a business trust. A primary characteristic of a business trust is whether it was created with the primary purpose of transacting business or carrying on commercial activity for a profit. *In re Dayton Title Agency, Inc.,* 292 B.R. 857, 876 (Bankr. S.D. Ohio 2003). Uniformly courts have held that trusts created solely to preserve the trust res for the beneficiaries do not satisfy the definition of a business trust. *Id.; In re Knight,* 303 B.R. at 680. Courts have also looked to a

3

variety of other factors to determine eligibility of business trusts, such as whether the trust is actively engaged in and doing business and whether the trust has significant attributes of a corporation. *In re Parade Realty, Inc. Employees Retirement Pension Trust,* 134 B.R. 7, 8-11 (Bankr. D. Haw. 1991); *In re BKC Realty Trust,* 125 B.R. 65 (Bankr. D.N.H. 1991).

The Court finds that Debtor has not sustained its burden, particularly in light of Paragraph 2.2 in the Declaration of Trust that states that the purpose of the Trust is solely to enforce the judgment that has now been vacated. Debtor's attempts to argue to the contrary simply do not overcome this hurdle.

Debtor contends that, regardless of the stated purpose of the Trust, it actually conducted business by leasing the various parcels of land and collecting the water rights distributions. It provides little to no evidence, however, of any true *business* operations. The exhibits attached to its response do little to prove anything. For example, the Trust provides copies of a handful of checks written to the Trust from Catron Cotton in 2001 and 2003 for approximately $65,000, along with some correspondence between co-trustee of the Trust, Floyd Koch, and an unidentified gentleman named "Frank." Neither at the pleading nor hearing stage was any testimony given to explain the Debtor's business operations or how these leases were negotiated, what their terms were, how much rent for how many years was paid by Catron Cotton (let alone any other lessee, if any), how much profit the Trust made on the leases, etc. In fact, no copies of the leases themselves were provided. What was provided does little to counter Carlon's argument that the leasing of the land was simply an incidental part of the Trust.

The Trust also argues that it paid taxes as a Trust, yet failed to provide copies of any tax returns to allow the Court to see what business it actually conducted and what taxable earnings it really had, if any, and how much. Nothing in the record indicates that these indicia of doing business were anything other than incidental to the stated primary purpose of the Trust – collecting the judgment. As was stated in *In re Sung Soo Rim Irrevocable Intervivos Trust*, 177 B.R. 673, 678 (Bkrtcy. C.D. Cal.,1995), "[t]he mere fact that the trust happens to engage in business does not make it a 'business trust.'"

4

The Court also disagrees with the Trust that there is an underlying and implicit intent to conduct business contained in the language of the Declaration. In reading the Declaration itself from start to finish, the Court simply does not see it. In further support of its conclusion that the Trust does not qualify as a business trust is the fact that the Trust does not satisfy California's requirements to be a valid operating business trust. While the Court acknowledges that the Trust's failure to qualify under state law does not automatically mean it does not qualify under section 109, it is one additional factor in support of this decision. *See id.* "[W]hile the mere failure to comply with a state law technicality may not be entirely dispositive of whether a trust is eligible for relief in bankruptcy, this Court shall consider such non-compliance a significant factor in analyzing the nature of a trust." *See In re Morgantown Trust No. I,* 155 B.R. 137 (Bankr. N.D.W.Va. 1993); *In re St. Augustine Trust,* 109 B.R. 494, 496 (Bankr. M.D. Fla. 1990)

The Trust contends that if the Court is leaning toward dismissing the case on this ground, that nothing in the Trust prevents it from going back to amend the Declaration of Trust to bring it in line with the Trust's actual operations over the last few years. A similar argument was raised in *In re Foldesi Land Trust #3,* 2003 WL 25273865 (Bankr. D. Idaho 2003), which the court rejected. In *Foldesi,* the debtor trust sought leave to amend the trust entity postbankruptcy so as to cure any defects that might keep it from being a valid and eligible business trust. The court concluded, however, that because counsel could not point to any authority in support of such a post-filing change in the structure of a debtor entity in order to cure eligibility problems, the court denied the requested relief.

Finally, the Court concludes that a full evidentiary hearing would not change the outcome in this case. Even if the various allegations of "business" were to be fully supported by the evidence, the acts of owning property obtained from entities related to the beneficiaries, and thereafter collecting rent from those properties and obtaining benefits arising from the ownership of those properties would be insufficient to turn what was clearly intended to be a non-business trust into a business trust. Those are activities at best incidental to the primary, indeed sole,

5

purpose of the trust that was clearly defined at its formation. The plaintiffs/beneficiaries had the option of enforcing their judgment through various forms of collective ownership. They happened to choose one that would not be eligible at a later time to be a debtor in bankruptcy. Although it is undoubtedly true that bankruptcy was not in the parties' contemplation at the time of formation, the result is the same. As the debtor is ineligible under Section 109 of the Bankruptcy Code, this case must be dismissed.

For the foregoing reasons, movant's motion to dismiss is granted. Counsel for movant is to lodge a form of order consistent with this decision for the Court's signature.

So ordered.

**DATED**: October 24, 2006

CHARLES G. CASE II
UNITED STATES BANKRUPTCY JUDGE

COPY of the foregoing mailed by BNC and/or
sent by auto-generated mail to:

OFFICE OF THE U.S. TRUSTEE
230 N. First Avenue, Ste. 204
Phoenix, Arizona 85002-2913

Roger L. Cohen
Kevin J. Rattay
Thomas A. Connelly
Jaburg & Wilk, P.C.
14500 N. Northsight Blvd., Suite 116
Scottsdale, Arizona 85260
Attorneys for Debtor and Debtor in Possession

| | |
|---|---|
| 1 | |
| 2 | Gary S. Garfinkle |
| 3 | 1205 Via Gabarda |
| 4 | Lafayette, California 94549 |
| 5 | Attorneys for Carlon Properties, Inc. |
| 6 | James J. Trimble |
| 7 | Fennemore Craig, P.C. |
|   | 3003 N. Central Avenue, Ste. 2600 |
| 8 | Phoenix, Arizona 85012-2913 |
| 9 | Attorneys for Carlon Properties, Inc. |

7